UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CA ACQUISITION, LLC d/b/a CHICAGO AEROSOL, | ) | |
| | ) | |
| Plaintiff/Counter-Defendant, | ) | 15 C 5753 |
| | ) | |
| vs. | ) | Judge Gary Feinerman |
| | ) | |
| KEY BRANDS INTERNATIONAL, LTD., | ) | |
| | ) | |
| Defendant/Counter-Plaintiff. | ) | |

### MEMORANDUM OPINION AND ORDER

CA Acquisition, LLC d/b/a Chicago Aerosol sued Key Brands International, Ltd. for breach of contract and unjust enrichment, alleging that Key Brands did not pay for goods shipped in connection with eight purchase orders. Doc. 16-1. Key Brands counterclaimed, alleging that Chicago Aerosol sent defective goods in connection with five earlier purchase orders. Doc. 19 at 11-20. The court dismissed some of Key Brands's counterclaims, but allowed ones for breach of contract and warranty to proceed. Doc. 31 (Zagel, J.).

Chicago Aerosol now moves for partial summary judgment on an affirmative defense asserted by Key Brands to its claims. Doc. 63. In response, Key Brands moved under Civil Rule 56(d) for time to complete discovery on whether Chicago Aerosol's goods were defective. Doc. 75. Chicago Aerosol's motion is granted, and Key Brands's motion is denied as moot.

### Background

The facts are set forth as favorably to Key Brands as the record and Local Rule 56.1 permit. *See Canen v. Chapman*, 847 F.3d 407, 412 (7th Cir. 2017). On summary judgment, the court must assume the truth of those facts, but does not vouch for them. *See Arroyo v. Volvo Grp. N. Am., LLC*, 805 F.3d 278, 281 (7th Cir. 2015).

1

Chicago Aerosol manufactures aerosol spray can products, and Key Brands sells haircare products, including aerosol hairsprays. Doc. 84 at 1-2 ¶¶ 1-2. Chicago Aerosol became Key Brands' primary hairspray supplier in January 2012. *Id*. at 6 ¶ 3.

Between June 2013 and March 2014, Key Brands issued five purchase orders to Chicago Aerosol, which Chicago Aerosol filled. *Id*. at 8 ¶¶ 10-11. Key Brands paid for those orders, but now asserts that the goods it accepted were defective. *Id*. at 5 ¶ 9. Between May 2014 and November 2014, Key Brands issued eight more purchase orders, which Chicago Aerosol again filled. *Id*. at 9 ¶¶ 20-21. Key Brands did not pay for any of those eight orders, which amounted to $557,436.22. *Id*. at 4 ¶¶ 6-7.

Chicago Aerosol's suit seeks payment for the eight later purchase orders, while Key Brands's counterclaims seek compensation for the allegedly defective goods shipped under the five earlier purchase orders. *Id*. at 5 ¶ 9. While briefing the present motions, Key Brands asserted that goods shipped under the eight later purchase orders were defective as well. *Ibid*.; *id*. at 9-11 ¶¶ 20-26.

## Discussion

Chicago Aerosol asks the court to hold as a matter of law that: (1) the thirteen purchase orders were each separate contracts, not part of one overarching contract; and (2) Key Brands therefore may not rely on Chicago Aerosol's alleged shipment of defective goods under the five earlier purchase orders to defend against Chicago Aerosol's claims for nonpayment for the goods shipped under the eight later purchase orders. Doc. 111 at 1. In other words, Chicago Aerosol seeks summary judgment only as to a set-off affirmative defense that Key Brands has asserted, based on the allegedly defective goods that Chicago Aerosol sent under the five earlier purchase orders, to Chicago Aerosol's claims on the eight later purchase orders.

Chicago Aerosol's motion initially appeared to seek something more—entry of judgment on its claims. Doc. 63 at 2; Doc. 64 at 2. But the briefs cast matters in a different light, so at the motion hearing, the court inquired of Chicago Aerosol:

> THE COURT: So, what do you think your summary judgment motion is about? Is it limited to the issue of whether defective product shipped in conjunction with the five earlier purchase orders can be used to set off the amounts owed under the eight subsequent purchase orders?
>
> …
>
> THE COURT: I know it definitely includes that, but are you also seeking summary judgment outright on the eight purchase orders for the entire amount owed?

That prompted the following exchange:

> CHICAGO AEROSOL: … I mean, I think the primary issue of the summary judgment motion is the first argument that you articulated. …
>
> THE COURT: It's whether they can use defects in the earlier five to offset subsequent payments for the subsequent eight?
>
> CHICAGO AEROSOL: Correct.

Later, after an unclear remark by Chicago Aerosol, the court revisited the topic:

> THE COURT: You just said two contradictory things. It's one thing to knock out a single defense. That's the narrow summary judgment motion that you may have filed. You also may have filed a broader summary judgment motion, which is not just knocking out a single defense, but having victory on your claims. And I want to know … which motion do you think you filed? Are you simply trying to knock out a single defense based on the alleged defects in the five earlier purchase orders, or are you looking for outright victory on your claims as to the eight subsequent purchase orders? Because if it's the latter … I have to decide the defendant's second defense … to your … claim on the eight purchase orders, which is whether there is evidence in the record suggesting that there was defective product sent in conjunction with the eight purchase orders, which is a different defense than a defense based on defective product sent in conjunction with the five earlier purchase orders.
>
> So … if all you're doing is the narrow summary judgment motion, I don't even have to get into that other issue.
>
> CHICAGO AEROSOL: Right.

> THE COURT: But if you're looking for an outright victory on your affirmative claim, in other words, you're looking not just to knock out the defense based on the five earlier purchase orders, but you're actually asking for judgment as a matter of law on your claims as to the eight subsequent purchase orders, then … it's a more complicated endeavor.
>
> CHICAGO AEROSOL: Right. And we are pursuing the narrow aspect of the summary judgment. Sorry it took me a bit to understand the differences. I expect that if summary judgment is granted, the litigation will proceed with respect to the validity of or what is owed on the eight subsequent orders … .
>
> THE COURT: Okay. So, you are just trying to knock out their defense.
>
> CHICAGO AEROSOL: Right.

Since the motion hearing, Chicago Aerosol has confirmed the narrow scope of its motion. Doc. 111 at 1 ("Plaintiff's Motion for Partial Summary Judgment argues (1) the relevant thirteen purchase orders constituted thirteen separate contracts; (2) following receipt of the initial five orders containing alleged defective product, Key Brands placed eight orders with no intention to pay as a 'set-off;' and (3) as a matter of law, Key Brands' claimed right to 'set-off' cannot be applied among and between various contracts.") (footnote omitted).

The only merits question presently before the court, then, is this: May Key Brands rely on Chicago Aerosol's alleged shipment of defective goods under the five earlier purchase orders to offset its payment obligations under the eight later purchase orders? If, as Chicago Aerosol contends, each purchase order was a separate contract, and if, as it further contends, Illinois law prohibits cross-contract offsets of the sort Key Brands has in mind, then the answer is yes. Chicago Aerosol is right on both points.

First, each purchase order was a separate contract. Key Brands has adduced no evidence of any single, overarching contract between the parties. The only reasonable understanding of the purchase orders, then, is that each was a separate offer by Key Brands (of payment, in exchange for goods) and acceptance (which occurred when Chicago Aerosol shipped the

requested goods), giving rise to thirteen separate contracts. *See Coplay Cement Co. v. Willis & Paul Grp.*, 983 F.2d 1435, 1439-40 (7th Cir. 1993) (holding that two purchase orders were two separate contracts, where each transaction was "complete in itself"); *Berdex Int'l, Inc. v. Milfico Prepared Foods, Inc.*, 630 N.E.2d 998, 1000-01 (Ill. App. 1994) (holding that four purchase orders could not be construed as a single contract, where one party asserted that there was an overarching contract for "ongoing related purchases and sales" but identified no corroborating evidence to support its view); *IBM Corp. v. Fasco Indus., Inc.*, 1995 WL 110557, at *2 & n.1 (N.D. Ill. Mar. 8, 1995) (holding that a business relationship where one company issued multiple purchase orders to another was "a series of separate contracts, each calling for a single performance"). In fact, even if Key Brands *had* adduced evidence of some overarching or master agreement between the parties, the purchase orders *still* would be treated as separate contracts. *See ECHO, Inc. v. Whitson Co.*, 52 F.3d 702, 705 (7th Cir. 1995) ("[W]e have held under Illinois law that distributorship agreements and the purchase orders that arise under them are different contracts."); *Schieffelin & Co. v. Valley Liquors, Inc.*, 823 F.2d 1064, 1067 (7th Cir. 1987) (so holding).

Key Brands' retort—that Chicago Aerosol has itself "offer[ed] zero evidence that the purchase orders were separate contracts," Doc. 85 at 12 (emphasis omitted)—is wrong. Chicago Aerosol has adduced ample evidence, for each of the thirteen orders, that Key Brands requested specific quantities of specific goods at specific prices, and that Chicago Aerosol shipped the requested goods in response. Doc. 84 at 3 ¶ 4; Doc. 65-1 at 8-66. That is evidence that each purchase order formed a contract. *See All Line, Inc. v. Rabar Corp.*, 919 F.2d 475, 479 (7th Cir. 1990) (holding that the parties formed a contract where "a purchase order for rope from All Line constitute[ed] an offer, and an acceptance by Rabar [was] delivery of the rope" ); *Ruprecht Co. v.*

5

*Sysco Food Servs. of Seattle, Inc.*, 722 N.E.2d 694, 702 (Ill. App. 1999) ("Sysco faxed the orders to Ruprecht in Illinois. Ruprecht accepted Sysco's offer to purchase the meat by following Sysco's specifications, boxing the meat as required and shipping the meat to Sysco. Thus, the contracts for the sale of the meat were entered into in Illinois.").

Second, Illinois law forbids cross-contract setoffs. As a general rule, "one party's breach of contract may excuse the other from performing, but it will not excuse the other from the performance due from him under a separate contract between the parties." *Coplay*, 983 F.2d at 1439 (adding only the caveat, "unless of course performance under the one contract is conditioned expressly on performance under the other"); *see also Nat'l Farmers Org. v. Bartlett & Co., Grain*, 560 F.2d 1350, 1357 (8th Cir. 1977) ("It is well established that the breach of one contract does not justify the aggrieved party in refusing to perform another separate and distinct contract."); 24 Williston on Contracts § 66.42 (4th ed.) ("The Uniform Commercial Code permits the buyer to deduct all or any part of the damages caused by a breach of the contract by the seller from the price still due under the contract after notifying the seller of the intention to do so … *provided the seller's breach is of the same contract under which the price in question is claimed to have been earned*.") (emphasis added) (footnotes omitted). That rule applies in Illinois. *See* 810 ILCS 5/2-717, Uniform Commercial Code Comment 1 ("This section permits the buyer to deduct from the price damages resulting from any breach by the seller … . To bring this provision into application *the breach involved must be of the same contract under which the price in question is claimed to have been earned*.") (emphasis added); *Berdex Int'l*, 630 N.E.2d at 1000-01 (where the defendant first paid for allegedly rancid scallops shipped under one purchase order, and then refused to pay for frog legs shipped under three later purchase orders, holding that the defendant's alleged scallop-related damages could not be used to offset the

6

amounts owed under the three frog leg contracts); *Rebaque v. Forsythe Racing, Inc.*, 480 N.E.2d 1338, 1342 (Ill. App. 1985) ("[W]e hold that if, in an action under the Uniform Commercial Code for goods sold and delivered, a set-off is sought, the counterclaim … is limited to damages arising out of the same contract as the claim for the goods."). Key Brands does not dispute this point of law.

So Chicago Aerosol is entitled to a ruling that any defective goods shipped under the five earlier purchase orders cannot be used by Key Brands to justify partial or total nonpayment of the eight later purchase orders. There remains the question of Key Brands's Rule 56(d) motion, which argued that Key Brands needed discovery into alleged defects in Chicago Aerosol's goods before responding to Chicago Aerosol's summary judgment motion. With the benefit of hindsight, it is now clear that all of that was a frolic and detour. The discovery Key Brands sought was irrelevant to Chicago Aerosol's narrow motion, which focused only on whether the law allows Key Brands to offset the amounts owed under the eight later purchase orders by proving that Chicago Aerosol shipped defective goods under the five earlier purchase orders. Key Brands did not need discovery into whether the shipped goods were in fact defective to meet Chicago Aerosol's motion on the merits.

## Conclusion

Chicago Aerosol's motion for partial summary judgment is granted, and Key Brands's Rule 56(d) motion is denied as moot. Key Brands may not use Chicago Aerosol's alleged shipment of defective goods in connection with the five earlier purchase orders as a defense (partial or total) to Chicago Aerosol's nonpayment claims on the eight later purchase orders.

June 28, 2017

_____
United States District Judge